**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| GEORGETOWN DENTAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-00383-TWP-MJD |
| | ) | |
| CINCINNATI INSURANCE COMPANY, and | ) | |
| CINCINNATI CASUALTY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of
Civil Procedure 12(b)(6) by Defendants Cincinnati Insurance Company and Cincinnati Casualty
Company (collectively, "Defendants") (Filing No. 6). This action was initiated by Plaintiff
Georgetown Dental, LLC ("Georgetown Dental") to recover under the insurance policy provided
by Defendants for economic losses sustained due to closures necessitated by the global COVID-
19 pandemic. Defendants moved to dismiss, arguing that the insurance policy "supplies property
insurance coverage, not financial loss coverage in the absence of direct physical loss or damage to
property." (Filing No. 7 at 1.) While sympathizing with the plight of Georgetown Dental and all
businesses reckoning with the impact of COVID-19's terrible effects,[1] the Court, for the following
reasons, **grants** Defendants' Motion to Dismiss.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but, as required when reviewing a
motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all

---

[1] *See* Filing No. 7 at 11 n.4 (listing statements by courts acknowledging "the tremendous toll the COVID-19 pandemic
has taken on people and businesses.")

inferences in favor of Georgetown Dental as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

A.    **The Policy**

At all relevant times, Defendants insured Georgetown Dental (Filing No. 1-1 at 3). Two portions under this "policy of insurance identified as Policy No. ECP 021 17 84" (the "Policy") are at play here: Form FM 101 05 16 (the main property coverage form) and Form FA 213 05 16 (an additional coverage form for business income loss). *Id.* These two forms are discussed below.

1.    **Form FM 101 05 16: "Building and Personal Property Coverage Form"**

The Policy's "Building and Personal Property Coverage Form" ("Building Form") states, "We will pay for the direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." *Id.* at 3, 5 (quoting Filing No. 6-1 at 23).[2] "Loss" is defined in the Building Form as "accidental physical loss or accidental physical damage." (Filing No. 6-1 at 58.) "Covered Causes of Loss," in turn, comprise "direct 'loss' unless the 'loss' is excluded or limited." *Id.* at 25.

The Building Form also contains "'Business Income and Extra Expense' coverage." *Id.* (citing Filing No. 6-1 at 38–39). Under this coverage, Defendants "'will pay for the actual loss of "Business Income" and "Rental Value" you sustain due the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.'" *Id.* at 6 (quoting Filing No. 6-1 at 38). "Period of restoration" means "the period of time that a. [b]egins at the time of direct 'loss' [and] b. [e]nds on the earlier of (1) [t]he date when the property at the

---

[2] Though Georgetown Dental references and quotes from the Policy, it does not attach a copy of it to the Complaint. Defendants, however, attached a copy to their Motion to Dismiss (*see* Filing No. 6 at 1), and the Court will reference this attachment when it is relevant to Georgetown Dental's assertions.

'premises' should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) [t]he date when business is resumed at a new permanent location." (Filing No. 6-1 at 59.) And, again, "loss" means "accidental physical loss or accidental physical damage." *Id.* at 58.

  The Building Form additionally contains "Civil Authority" coverage, which instructs that "[w]hen a Covered Cause of Loss causes damage to property other than Covered Property at a 'premises,'" Defendants "'will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises."'" *Id.* (quoting Filing No. 6-1 at 39). For this Civil Authority coverage to take effect, a civil authority must prohibit "[a]ccess to the area immediately surrounding the damaged property . . . as a result of the damage," and the civil authority must have taken the action "in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action [was] taken to enable a civil authority to have unimpeded access to the damaged property." (Filing No. 6-1 at 39.)

   **2.** **Form FA 213 05 16: Business Income Form**

  The Policy also contains a separate "Business Income (and Extra Expense) Coverage Form" ("Business Income Form") (Filing No. 1-1 at 5). The Business Income Form provides the same coverage as the Building Form concerning business income and extra expense resulting from suspension of operations during a "period of restoration" caused by a "loss." *Id.* (citing Filing No. 6-1 at 113–14). The Business Income Form provides identical "Civil Authority" coverage as the Building Form: Defendants "will pay for the actual loss of 'Business Income' you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the 'premises'" when "a Covered Cause of Loss causes direct damage to property other than Covered Property at the 'premises.'" (Filing No. 6-1 at 114.)

**B.**    <u>**COVID-19 "shutdown"**</u>

On February 24, 2020, "the United States Center[s] for Disease Control[ and Prevention] [(the "CDC")] and the American Dental Association [(the "ADA")] suggested postponing non-emergency or elective dental procedures due to the presence of Covid-19 in the State of Indiana." (Filing No. 1-1 at 3.) A few weeks later, on March 6, 2020, Indiana Governor Eric Holcomb ("Governor Holcomb") issued Executive Order 20-02, declaring "a public health emergency in the State of Indiana and urg[ing] coordination of the entire healthcare infrastructure of Indiana to help prevent the spread of disease and to conserve and optimize the use of personal protection equipment." *Id.* at 4 (citing Filing No. 6-2).[3] Ten days later, on March 16, 2020, Governor Holcomb issued Executive Order 20-04, which required "the postponement of non-essential elective and non-urgent surgical procedures at hospital and ambulatory surgery centers." *Id.* (citing Filing No. 6-3). A week later, Governor Holcomb issued Executive Order 20-08, calling "for Indiana residents to 'stay at home' and further urg[ing] dental offices to use good judgment to avoid potentially contributing to caus[ing] the spread of Covid-19." *Id.* (citing Filing No. 6-4). On March 30, 2020, Governor Holcomb issued Executive Order 20-13, which "ordered dentists to cancel or postpone elective and non-urgent procedures." *Id.* (citing Filing No. 6-5).

Eventually, Governor Holcomb issued Executive Order 20-22, permitting "dentists to resume providing services as of 11:59 p.m. on Sunday, April 26th, 2020." (Filing No. 1-1 at 4 (citing Filing No. 6-6).) Executive Order 20-22 was subject to weekly reevaluation and "encouraged businesses to comply with social distancing requirements." *Id.* (citing Filing No. 6-6). On April 24, 2020, Governor Holcomb issued Executive Order 20-24, "allowing the resumption

---

[3] As with the Policy, Georgetown Dental references and quotes various Executive Orders issued by Governor Holcomb but does not attach copies of them to its Complaint. Defendants, again, attached copies to their Motion to Dismiss (*see* Filing No. 6 at 2), so the Court will also cite those attachments as they are germane to Georgetown Dental's allegations.

of elective and non-urgent medical procedures, 'so long as they have adopted policies and best practices that protect patients, physicians and staff against Covid-19 and also have sufficient quantities of PPE.'" *Id.* (citing Filing No. 6-7). Executive Order 20-24 "urged healthcare providers to, 'consult the best practices and recommendations developed by their respective medical associations or industries, many of which can be found online.'" *Id.* at 5 (citing Filing No. 6-7). Because of the guidelines and orders from the CDC, the ADA, and the State of Indiana, Georgetown Dental was entirely closed from March 12, 2020 to May 11, 2020. *Id.* It "also experienced significant periods of partial closure." *Id.* Because of these mandated closures, Georgetown Dental has "sustained a loss of income" and has "incurred various expenses in connection with the property and dental practice due to the Covid-19 pandemic." *Id.*

Outlining coverage under the Building Form and the Business Income Form described above, Georgetown Dental now seeks a declaratory judgment against Defendants that the Policy "provides coverage for the damages sustained by [it] during the closure of the dental office due to the Covid-19 pandemic." (Filing No. 1-1 at 7.) Georgetown Dental also requests that the Court determine the damages owed under the Policy. *Id.* In response, Defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Filing No. 6).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. But courts need not "accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

And when resolving a motion to dismiss under Rule 12(b)(6),

> a court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim. In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit.

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up).

### III.   DISCUSSION

Indiana law governs this diversity jurisdiction case. Under Indiana law, the interpretation of an insurance policy is a question of law to be determined by a court. *Buckeye State Mut. Ins.*

*Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009) (citing *Briles v. Wausau Ins. Co.*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006)). When interpreting an insurance policy, a court's goal is to "ascertain and enforce the parties' intent as manifested in the insurance contract." *Id.* If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* A court must construe the insurance policy as a whole and consider all the provisions of the contract and not just the individual words, phrases, or paragraphs. *Briles*, 858 N.E.2d at 213. A court must also accept an interpretation of the contract language that harmonizes the provisions, rather than one that supports conflicting versions of the provisions. *Id.* As such, a court "should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 676 (Ind. Ct. App. 2007).

Georgetown Dental argues that because the closure necessitated by "the Covid-19 pandemic resulted in a loss of [Georgetown Dental's] ability to use the covered property for the intended purpose of a dental practice," Defendants must provide coverage to it under the Building Form for the "resulting damages pursuant to the terms of the policy as a 'covered cause of loss.'" (Filing No. 1-1 at 5; *see* Filing No. 6-1 at 23.) Additionally, "the loss of business income and extra expenses . . . is a covered loss under the Business Income and Extra Expense Coverage for which Defendant is liable." *Id.* at 6. Moreover, a "separate and identical" coverage form "elsewhere in the policy" also covers the loss (citing Filing No. 6-1 at 113–14). Finally, Georgetown Dental maintains that its closure "resulting from the recommendations and orders of various civil authorities is a covered cause of loss for which Defendant is liable under the insurance policy." *Id.* at 6. Accordingly, Georgetown Dental "requests the Court interpret the insurance policy as outlined above and issue a declaratory judgment that the insurance policy at issue provides coverage for the damages sustained by [it] during the closure of the dental office due to

the Covid-19 pandemic." *Id.* at 7. Moreover, Georgetown Dental "requests the Court determine the amount of damages sustained by [it] and the amount of money owed to [it] under the applicable insurance policy." *Id.*

Defendants move to dismiss because Georgetown Dental has failed to allege either "direct physical loss or damage to property" or "damage to other property or that access to its premises was prohibited." (Filing No. 6 at 3.) Citing to numerous decisions in support of their position, Defendants argue courts have nearly unanimously dismissed similar complaints, holding that policies like Georgetown Dental's "***unambiguously*** require that there be tangible alteration to property in order to fulfill the requirement of direct physical loss or damage to property." (Filing No. 7 at 8–11 (emphasis in original).) After their string-cite spanning more than two pages, Defendants point to several specific cases where federal district courts have granted their motions to dismiss in like cases, all noting that "loss" under insurance policies containing "the same or substantively identical language" as the Policy requires some form of tangible, physical loss or damage. *Id.* at 11–12.

In particular, Defendants call attention to three cases involving "dental offices alleging financial losses due to virus-related orders temporarily banning elective dental procedures." *Id.* at 12 (citing *Oral Surgeons, P.C. v. The Cincinnati Ins. Co.*, 2020 WL 5820552 (S.D. Iowa); *Sandy Point Dental PC v. The Cincinnati Ins. Co.*, No. 20-CV-2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020); *Webb Dental Assocs. DMD PA v. The Cincinnati Indem. Co.*, No. 1:20-cv-250-AW-GRJ (N.D. Fla. Jan. 15, 2021) (attached as Filing No. 6-8)). In each of these cases, the "courts all held that the plaintiffs' respective claims for financial losses, absent any actual, demonstrable change to their property, failed to show direct physical loss or damage to property as required for

any coverage under those policies." *Id.* (citing *Webb Dental*, Filing No. 6-8 at 3–4; *Sandy Point*, 2021 WL 83758, at *3; *Oral Surgeons*, 2020 WL 5820552, at *1).

Defendants contend the same rationale applies even "for other types of businesses" covered by identical or substantially similar policies issued by Defendants. *Id.* at 13–15 (citing *TJBC, Inc. v. The Cincinnati Ins. Co., Inc.*, No. 20-CV-815-DWD, 2021 WL 243583 (S.D. Ill. Jan. 25, 2021); *Uncork & Create LLC v. The Cincinnati Ins. Co.*, No. 2:20-cv-00401, 2020 WL 6436948 (S.D.W. Va. Nov. 2, 2020); *Promotional Headwear Int'l v. The Cincinnati Ins. Co.*, No. 20-cv-23211-JAR-GEB, 2020 WL 7078735 (D. Kan. Dec. 3, 2020); *4431, Inc. v. Cincinnati Ins. Cos.*, 2020 WL 7075318 (E.D. Pa. Dec. 3, 2020); *T & E Chicago LLC v. The Cincinnati Ins. Co.*, No. 20-C-4001, 2020 WL 6801845 at *4 (N.D. Ill. Nov. 19, 2020) (all dismissing claims like Georgetown Dental's)). Additionally, Defendants maintain that these "Coronavirus decisions" comport with "established, prevailing" interpretations of similar insurance policies outside of this pandemic context. *Id.* at 15–18 (citing, among many other cases, *Mama Jo's Inc. v. Sparta Ins. Co.*, 2020 WL 4782369 (11th Cir. Aug. 18, 2020) (in Defendants' words, all of which require "a physical alteration to property"). Defendants assert, "[t]he Coronavirus does not physically alter the appearance, shape, color or any other material dimension of property," and Georgetown Dental "does not allege physical alteration to its property." *Id.* at 17, 22.

Further, Defendants note that coverage for business income losses is limited to a "Period of Restoration," which "ends on the earlier of: (1) the date when the property at the premises should be repaired, rebuilt or replaced with reasonable speed and similar quality, or (2) the date when business is resumed at a new permanent location." *Id.* at 18–19 (citing Filing No. 6-1). Defendants maintain that this language—referencing repairing, rebuilding, or replacing—"contemplates an

actual, concrete, change in property." *Id.* at 19. In other words, absent physical alteration, "there is nothing to repair or replace." *Id.* at 20 (numerous favorable, illustrious citations omitted).

Defendants also argue that "Civil Authority" coverage does not apply because it "requires direct physical loss or damage to property other than [Georgetown Dental's] property," and no civil authority issued "an order prohibiting access to" Georgetown Dental's premises. *Id.* at 23. First, the Complaint makes no mention of any physical loss or damage to other property, and even if it had, Defendants contend, "[t]he virus and the Orders . . . do not cause physical alteration to property." *Id.* at 24. And second, "the Executive Orders [Georgetown Dental] alleges encouraged necessary medical procedures to continue and expressly permitted employees and patients to go to dental offices." *Id.* at 26. In other words, wholesale "access to the premises was not prohibited." *Id.* at 26–27 (citations omitted). Finally, Defendants conclude that Defendant The Cincinnati Casualty Company should be dismissed because "the Policy was issued by The Cincinnati Insurance Company," and Georgetown Dental "has not alleged any facts to show a viable claim against The Cincinnati Casualty Company." *Id.* at 27–28.

Georgetown Dental responds that "[t]he definition of 'loss' includes more than 'physical damage.'" ([Filing No. 22 at 2](#)). Indeed, "loss" also encompasses "the disjunctive 'physical *loss*,'" which arose here from "[t]he inability to use the dental office for its intended purpose." *Id.* Georgetown Dental notes that nowhere does the Policy mention "tangible alteration to property," so the Complaint's allegations suffice to state a claim. *Id.* at 2–3 (emphasis added). Georgetown Dental continues that "Indiana law is well settled that property damage claims include loss of use of property for its intended purpose." *Id.* at 9 (citing *Chemco Transport, Inc. v. Conn*, 527 N.E.2d 179, 181 (Ind. 1988); *Am. Family Mut. Ins. Co. v. Hall*, 764 N.E.2d 780, 782 (Ind. Ct. App. 2002)). Instead of applying this principle, Georgetown Dental accuses Defendants of attempting "to avoid

business interruption and ordinance or law coverage by construing the policy strictly against the insured using an ambiguous interpretation at best." *Id.* Attacking the cases relied upon by Defendants, Georgetown Dental notes that none of the authorities represent binding precedent. *Id.* at 10. Georgetown Dental then notes that "there are indeed plenty of other courts which have found contrary to [Defendants'] position." *Id.* at 10–11 (citing numerous cases).

Georgetown Dental also argues that because "accidental physical loss" is undefined by the Policy, it should be interpreted (1) "expansively as a layperson would understand the phrase," *id.* at 13 (citing *American Economy Ins. Co. v. Liggett*, 426 N.E.2d 136, 138 (Ind. Ct. App. 1981)), and (2) "in accordance with the reasonable expectations of policyholders," *id.* (citing *Property Owners Ins. Co. v. Hack*, 559 N.E.2d 396, 399–400 (Ind. Ct. App. 1990)), and (3) "any ambiguities in the meaning of the phrase should be construed against insurers and in favor of policyholders," *id.* (citing *Davidson v. Cincinnati Ins. Co.*, 572 N.E.2d 502, 505 (Ind. Ct. App. 1991)). Applying these principles, Georgetown Dental asserts, "government orders shutting down businesses because of actual or threatened coronavirus contamination either in the air or on surfaces of the policyholder's property constitutes 'physical loss' of the property." *Id.* Moreover, Defendants "chose not to include a virus exclusion," providing "further evidence it did not intend to exclude losses resulting from viruses." *Id.* at 14.

Georgetown Dental also compares its case to those where courts found "loss" of property (through losing "physical use of the insured property"), even in the face of no physical alteration of any property. *Id.* at 14–18. First, it contends that its case is like one where the Colorado Supreme Court held that there was "loss" of property when gasoline accumulated in and around a church building, "'making further use of the building highly dangerous.'" *Id.* at 16–17 (quoting *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 54 (Colo. 1968)). Second, Georgetown

11

Dental analogizes its case to one where the Supreme Court of Appeals of West Virginia held that loss covered under a policy occurred when families were compelled to leave their homes after boulders crushed two of three homes. *Id.* at 17 (citing *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W. Va. 1998)). Though no damage had occurred at the third home, the *Murray* court held that the property had suffered "real damage" after it became clear that rocks could crash down at any time. *Id.* (citing *Murray*, 509 S.E.2d at 17).

Georgetown Dental then points to four cases from other district courts that "ruled against [Defendants] on the exact same issue." *Id.* at 18. First, "[t]he Court in *Southern Dental Birmingham, LLC* permitted plaintiff's business income claims and civil authority claims after rejecting Cincinnati's definition of 'loss' to include only damage to the structural integrity of the property." *Id.* (citing *S. Dental Birmingham LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-681-AMM, 2021 WL 1217327 (N.D. Ala. Mar. 19, 2021)). Second, in *Studio 417 v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 801 (W.D. Mo. 2020), the court "recognized that 'physical loss' is different from 'physical damage' and therefore a 'physical alteration' was not required." *Id.* Additionally, the court in *K.C. Hopps, Ltd. v. The Cincinnati Ins. Co., Inc.*, No. 20-CV-00437-SRB, 2020 WL 6483108, at *1 (W.D. Mo. Aug. 12, 2020), "adopted the same reasoning coronavirus-related business interruption insurance claims as it had in *Studio 417*." *Id.* at 19. Finally, the court in *Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, No. 20 C 2806, 2021 WL 767617 (N.D. Ill. Feb. 28, 2021), "rejected Cincinnati's 'physical alteration' argument because the term 'physical loss' is broad enough to encompass loss of use without actual physical damage." *Id.*

Finally, Georgetown Dental concludes that "[n]o exclusion in [Defendants'] policy comes close to describing the cause of Georgetown Dental's losses here." *Id.* at 19. In fact, "[t]he dangerous conditions created by the COVID-19 pandemic thus fit comfortably within the

exceptionally broad coverage grant of [Defendants'] policy." *Id.* Because COVID-19 is not "specifically and clearly excluded" under the Policy, there is no exclusion for these pandemic-related losses. *Id.* at 19–20.[4]

In reply, Defendants assert that a "swell of recent authority" establishes "that the phrase direct physical loss or damage to property unambiguously requires actual physical alteration to property. Loss of use standing alone is insufficient." (Filing No. 24 at 2.) Though Georgetown Dental argued in its response brief "that the 'presence of the coronavirus generally' caused its loss of use," it "never expressly alleges that the virus was actually detected at its premises, much less where it was discovered, when, and what it supposedly did to its property." *Id.* at 3–4. "Moreover, the alleged Indiana executive orders say that they were issued in response to a public health emergency and to minimize the spread of the disease, not due to direct physical loss or damage to Plaintiff's or any other property." *Id.* at 4. In fact, "dental offices"—like Georgetown Dental—were expressly deemed "essential" businesses and emergency procedures were permitted to continue throughout all "restrictions." *Id.*

Defendants point to two recent cases from Indiana rejecting claims similar to Georgetown Dental's. *Id.* at 5. First, in *MHG Hotels, LLC v. Emcasco Ins. Co., Inc.*, No. 1:20-cv-01620-RLY-TAB (S.D. Ind. Mar. 8, 2021) (attached as Filing No. 24-2), Judge Young of this Federal District granted an insurer's motion to dismiss, ultimately holding that "[t]he words 'direct' and 'physical,' which modify the word 'loss' ordinarily connote actual demonstrable harm of some form to the premises itself." *Id.* (citing Filing No. 24-2 at 11–12 (quotation omitted)). Moreover, examining

---

[4] Georgetown Dental also appears to argue in its response brief that an additional portion of the Policy labeled "Ordinance of Law" provides it with coverage stemming from COVID-19 closures (Filing No. 22 at 8–9). Because this allegation was not pled in the Complaint, the Court must disregard it. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (holding that it is "axiomatic . . . that a plaintiff may not amend his complaint in his response brief").

that insurance policy as a whole, Judge Young held that the damage must be direct or physical because the term "period of restoration" referenced was defined as the time needed to repair, rebuild, or replace the property. *Id.* (citing Filing No. 24-2 at 6, 12). Second, in *Indiana Repertory Theatre v. Cincinnati Ins. Co.* ("*IRT*"), No. 49D01-2004-PL-013137 (Marion Sup. Ct. Mar. 12, 2021) (attached as Filing No. 24-3), Judge Welch of the Marion Superior Court granted summary judgment to The Cincinnati Casualty Company, holding "that a loss of use of property does not satisfy a direct physical loss or damage requirement under Indiana law." *Id.* at 6 (citing Filing No. 24-3 at 26).

Additionally, Defendants note that other Indiana cases cited by Georgetown Dental "do not refute or undermine *MHG* or *IRT*[]" because "none analyze the operative direct physical loss or damage requirement at issue here," and two of the other cases "involved automobile insurance policies," and another arose when "a fire destroyed the building and inventory." *Id.* at 7 (citing *Am. Family Mut. Ins. Co.*, 764 N.E.2d 780; *Chemco Transportation, Inc. v. Conn*, 527 N.E.2d 179 (Ind. 1988); *Ebert v. Grain Dealers Mut. Ins. Co.*, 158 Ind. App. 379, 303 N.E.2d 693 (1973)). Defendants at great length distinguish many of the other federal and out-of-state cases cited by Georgetown Dental. *Id.* at 8–17.

Finally, Defendants maintain that the lack of a virus exclusion is irrelevant because "'an insured must first demonstrate that it satisfies the policy's insurance agreement. Only after the insured satisfies this burden are exclusions relevant.'" *Id.* at 17–18 (citing *IRT*, Filing No. 24-3 at 27). Moreover, the Civil Authority coverage requires both that a government order prohibit (not merely limit) access to the premises and that the order is "issued because of direct physical damage to property other than the insured premises." *Id.* at 18–19. Here, Defendants maintain that Georgetown Dental has failed to allege either. *Id.* at 19.

Upon review of the parties' arguments, the Complaint, and the Policy, the Court agrees with Defendants: the Policy does not cover Georgetown Dental for its alleged losses sustained due to the COVID-19 pandemic. First, for "Business Income" and "Extra Expenses" coverage under both forms at issue to apply, Georgetown Dental must demonstrate that it has suffered some property "loss." (Filing No. 6-1 at 38–39; 113–14.) This term, as defined by both forms, "means accidental physical loss or accidental physical damage." (Filing No. 6-1 at 58, 121.) Consistent with the emerging lion's share of cases, the Court determines that this "physical loss" or "physical damage" must be actual and demonstrable physical harm and finds Georgetown Dental's contrary reading of the Policy especially strained. *See Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, No. 20-CV-720-JPS-JPS, 2021 WL 1169565, at *6 (E.D. Wis. Mar. 26, 2021) ("Plaintiffs proffer an extremely tortured interpretation of the terms 'physical loss of or damage to.'").

Specifically, the Court finds *MHG* and *IRT*—the Indiana cases cited by Defendants— particularly instructive. As Judge Young put it in *MHG*, the phrase "physical loss of or damage to," even if facially disjunctive, connotes "'actual demonstrable harm of some form.'" (Filing No. 24-2 at 12 (quoting *Sandy Point*, 2020 WL 5630465, at *2); *see also Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, No. 20 C 3463, 2021 WL 633356, at *3 (N.D. Ill. Feb. 18, 2021) ("[P]laintiff argues that the use of the disjunctive in 'direct physical loss or damage' requires that 'loss' and 'damage' be interpreted differently. . . . The plain wording of the phrase requires either a permanent disposition of the property due to a physical change ('loss'), or physical injury to the property requiring repair ('damage').") (citation omitted) (underlining in original).) Similarly, Judge Welch in *IRT* noted "that the Policy requires physical alteration to the premises to trigger the business income coverage" because "the Court must give effect to the 'physical' requirement

… [i]f loss of use alone qualified as direct physical loss to property, then the term 'physical' would have no meaning." (Filing No. 24-3 at 26.)

The Court agrees—holding that "loss" encompasses "loss of use"—absent any demonstrable harm to a premises, ignores the Policy's demand of *physical* loss or damage. *See also L&J Mattson's Co. v. Cincinnati Ins. Co., Inc.*, No. 20 C 7784, 2021 WL 1688153, at *5 (N.D. Ill. Apr. 29, 2021) ("The word physical modifies loss in 'physical loss' and damage in 'physical damage.' The plain meaning of physical is tangible or concrete.") (citing *Chief of Staff LLC v. Hiscox Ins. Co. Inc.*, Case No. 20 C 3169, 2021 WL 1208969 at *2 (N.D. Ill. Mar. 31, 2021) ("physical" means "tangible, concrete"); *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1039, 1040 (7th Cir. 2019) ("We have also explained that 'physical' generally refers to tangible as opposed to intangible damage.")).[5] In sum,

> the phrases "direct physical loss" and "direct physical . . . damage" are best read so as not to completely overlap and thereby render one or the other superfluous. But it does not follow that mere loss of use—without any tangible alteration to the physical condition or location of property at the insured's premises—falls within the meaning of either phrase. Read naturally, the two phrases can be read to exclude loss of use without rendering either superfluous. To illustrate, consider a thief who attempts to steal a desktop computer. If the thief succeeds, the computer is "physical[ly] los[t]" but not necessarily "physical[ly] . . . damage[d]." If the thief cannot lift the computer, so instead of stealing it takes a hammer to its monitor in frustration, the computer would be "physical[ly] . . . damage[d]" but not "physical[ly] los[t]." Yet if the thief were only to change the password on the system so that employees could not log in, there would be neither "physical . . . damage" nor "physical loss," though the computer would be unusable for some while. The Business Income provision might cover the first two cases, but it does not cover the third.

---

[5] Georgetown Dental also seemingly argues that business income coverage applies because "[t]he definitions of 'suspension' and 'operations' contemplate the inability to conduct business due to the lack of 'tenantability' of the premises." (Filing No. 22 at 6–7.) But as Defendants note, "the 'tenantability' of a premises only matters for 'Rental Value' claims, which Plaintiff has not asserted," and "the tenantability provision does not eliminate the underlying requirement of direct physical loss or damage to property." (Filing No. 24 at 20.)

*Chief of Staff LLC v. Hiscox Ins. Co. Inc.*, No. 20 C 3169, 2021 WL 1208969, at *3 (N.D. Ill. Mar. 31, 2021).

Moreover, the courts in *MHG* and *IRT* found that respective policy definitions of "period of restoration"—the time in which payment is owed for lost income and related extra expenses—shed additional light on the term's meaning. In *MHG*, Judge Young noted that the definition's use of "'[t]he words "rebuild," "repair" and "replace" all strongly suggest that the damage contemplated by the Policy is physical in nature.'" ([Filing No. 24-2 at 12](#) (quoting *Mudpie Inc. v. Travelers Casualty Ins. Co. of Am.*, No. 4:20-cv-03213, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 4, 2020)).) And Judge Welch in *IRT* "note[d] that there is nothing to 'repair,' 'rebuild' or 'replace' if the premises have not been damaged." ([Filing No. 24-3 at 27](#).)

The Court finds that the definition of "period of restoration" in this Policy—also connoting the time in which a business is repairing, replacing, and rebuilding—unmistakably contemplates actual and demonstrable physical harm. *See also L&J Mattson's*, 2021 WL 1688153, at *6 ("The Policy covers Business Income only during a 'period of restoration,' and . . . Plaintiff has not alleged that the presence of the virus required any of the property at the premises to be repaired, replaced or rebuilt (nor could it) or that the presence of the virus required a move to a new permanent location." (footnote omitted).) In short, because Georgetown Dental "has not alleged any physical alteration or structural degradation to the premises, nor the need to 'repair,' 'replace,' or 'restore' any physical element of the property in order to reopen for business," *Bend Hotel Dev. Co., LLC v. Cincinnati Ins. Co.*, No. 20 C 4636, 2021 WL 271294, at *3 (N.D. Ill. Jan. 27, 2021), it has not sufficiently alleged "loss" as required by the Policy, *see also Zajas, Inc. v. Badger Mut. Ins. Co.*, No. 20-CV-1055-DWD, 2021 WL 1102403, at *3 (S.D. Ill. Mar. 23, 2021) ("[a]greeing with many

courts . . . that the Covid-19 virus does not cause 'direct physical loss or damage to' covered property under a business income loss policy") (citations omitted).

To be sure, Georgetown Dental points to some cases that have held for plaintiffs in this context under similar policies. *See, e.g.*, *Studio 417*, 478 F. Supp. 3d 794; *Blue Springs*, 488 F. Supp. 3d 867. But "courts have either tiptoed around the holding in *Studio 417*, criticized it, or treated it as the minority position." *Am. Food Sys., Inc. v. Fireman's Fund Ins. Co.*, No. CV 20-11497-RGS, 2021 WL 1131640, at \*4 n.7 (D. Mass. Mar. 24, 2021) (citation omitted). And "*Blue Springs Dental Care, LLC*, represents an outlier case." *Cafe Plaza de Mesilla Inc. v. Cont'l Cas. Co.*, No. 2:20-CV-354-KWR-KRS, 2021 WL 601880, at \*6 (D.N.M. Feb. 16, 2021). Indeed, "the weight of recent authority, created by the deluge of coronavirus-related insurance disputes, favors Defendant's position in almost uniformly rejecting Plaintiff's reasoning," and the reasoning represented by *Studio 417* and *Blue Springs Dental Care* (and others, including *S. Dental Birmingham LLC*, 2021 WL 1217327, *K.C. Hopps, Ltd.*, 2020 WL 6483108, and *Derek Scott*, 2021 WL 767617). *Id.* In any event, while *Studio 417* and *Blue Springs* involved allegations that the virus "attached" itself to the businesses resulting in some sort of "physical loss", that contention is absent here. *See Firenze Ventures LLC v. Twin City Fire Ins. Co.*, No. 20 C 4226, 2021 WL 1208991, at \*5 (N.D. Ill. Mar. 31, 2021) ("Firenze also cannot satisfy the . . . requirement[] that its claimed loss be for '[d]irect physical loss or direct physical damage to Covered Property.' The reason is plain: Firenze does not allege that the COVID-19 virus was physically present at its deli, the only premises identified in the policy's declarations.") (citation omitted). Because Georgetown Dental has not suffered a "loss" as contemplated by the Policy, the Court **grants** Defendants' Motion to Dismiss as it pertains to coverage requiring such.

As for coverage under the "Civil Authority" provisions of the forms, those portions of the Policy require "direct damage to property other than Covered Property at the 'premises.'" (Filing No. 6-1 at 39, 114.) As Defendants note, nowhere does Georgetown Dental's Complaint allege any damage to "other" property (*see* Filing No. 24 at 19). As Judge Young expressed in *MHG*, "[f]ailure to satisfy this requirement alone warrants dismissal of this claim." (Filing No. 24-2 at 14; *see also Chief of Staff*, 2021 WL 1208969, at *5 (holding Civil Authority provision did not apply because it "requires that the 'other property' have suffered 'damage,' and the complaint does not allege, nor does Chief of Staff argue, that the closure orders were due to some other property within one mile of Chief of Staff's premises having been damaged by the coronavirus").) And even if Georgetown Dental had alleged "direct damage" to other premises because of COVID-19's presence, Civil Authority coverage would not apply because the mere incidence of the virus, as discussed above, does not constitute "damage" to a property. *See Paradigm Care*, 2021 WL 1169565, at *7 ("[T]he Court rejects Plaintiffs' arguments that they suffered "physical loss or damage to" their covered premises as the result of COVID-19. Thus, Plaintiffs' allegations of the same type of damage to property near the insured premises are based on facts that this Court has already determined do not constitute physical loss or damage.").

Even so, this coverage also requires that a civil authority "prohibits access to the 'premises.'" (Filing No. 6-1 at 39, 114). Governor Holcomb's Executive Orders never prohibited Georgetown Dental from accessing the premises, and, in fact, Georgetown Dental—as a dental office—was deemed an "essential" business and was permitted to continue operations while other businesses were not (*see* Filing No. 6-4 at 5; *see also Sandy Point*, 488 F. Supp. 3d at 694 ("[P]laintiff concedes that dental offices were deemed essential businesses for emergency and non-

elective work. Consequently, plaintiff has failed to allege that access to its premises was prohibited by government order.")).

Additionally, this coverage requires that "[a]ccess to the area immediately surrounding the damaged property is prohibited," (Filing No. 6-1 at 39, 114), and Georgetown Dental has not alleged that access to any area around its business was barred by a civil authority. *See Chief of Staff*, 2021 WL 1208969, at \*6 (determining Civil Authority coverage inapplicable because "the complaint does not allege that the closure order prevented people from accessing [a city's] sidewalks and roads, including those adjacent to any damaged premises, even if it did bar people from entering the premises of nonessential businesses."). In short, as stated by the court in *L&J Mattson's*, "the purpose of the Governor's Executive Order was to prevent human beings from congregating and spreading the virus from one to another, not to protect people from dangerous property damage." 2021 WL 1688153, at \*7; *see also Riverside Dental of Rockford, Ltd. v. Cincinnati Ins. Co.*, No. 20 CV 50284, 2021 WL 346423, at \*5 (N.D. Ill. Jan. 19, 2021) ("[T]he Governor's Orders do not prohibit access to plaintiff's dental office. Order 2020-10 allowed individuals to work and receive services at dental offices. Order 2020-19 required elective surgeries and procedures to be cancelled or postponed. Emergency procedures were still allowed."). Because the "Civil Authority" provision does not apply, the Court additionally **grants** Defendants' Motion to Dismiss as it relates to this particular coverage.

Finally, as it declined responding to the argument that Defendant Cincinnati Casualty Company should be dismissed from the case because it did not issue the Policy, Georgetown Dental has effectively waived its claim against that Defendant. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) ("Because [the plaintiffs] did not provide the district court with any basis to decide their claims, and did not respond to the [defendant's] arguments, these

claims are waived."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 n.1 (7th Cir. 1996) (holding argument waived where appellants "failed to develop the argument in any meaningful manner"). Therefore, Defendants' Motion to Dismiss as it pertains to all claims against that defendant is **granted**. Cincinnati Casualty Company is **dismissed** from this action, independent of any decision concerning insurance policy coverage.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion to Dismiss ([Filing No. 6](#)).  Because no amount of revision could cure the Complaint's legal deficiencies, Georgetown Dental's claims are **DISMISSED with prejudice**.[6]    Final judgment will issue under separate order.

**SO ORDERED.**

Date: 5/17/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

John F. Townsend, III
TOWNSEND & TOWNSEND LLP
townsendlawfirm@aol.com

Dennis M. Dolan
LITCHFIELD CAVO LLP
dolan@litchfieldcavo.com

Laurence James William Tooth
LITCHFIELD CAVO LLP
tooth@litchfieldcavo.com

---

[6] "When a complaint fails to state a claim, the plaintiff ordinarily should receive at least one opportunity to amend it, unless an amendment would be futile." *Olrich v. Kenosha Cty.*, 825 F. App'x 397, 400 (7th Cir. 2020) (citing *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015)).